UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------┤
In Re:  CARLOS R. MOTA,             |    Case No. 10-13989
                     Debtor,        |    Chapter 13
------------------------------------|
CARLOS R. MOTA,                     |
                  Plaintiff,        |
                                    |
                                    |    Adv. Proc. No. 13-01553
                                    |    New York, NY
     -against-                      |    April 8, 2014
                                    |
WELLS FARGO BANK, NA, ET AL.,       |
                                    |
                  Defendants.       |
                                    |
                                    |
------------------------------------┘
```

<u>AMENDED HEARING</u>
BEFORE HON. ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

Adversary proceeding: <u>13-1553-alg</u> Mota v. Wells Fargo Bank, NA, et al Motion to allow Motion to Deem facts Admitted, Motion for Determination as to Confidential/Privilege status of Document and Motion to Reopen Discovery.

Adversary proceeding: <u>13-01553-alg</u> Mota v. Wells Fargo Bank, NA et al Motion for Summary Judgment/Notice of Cross-Motion for Partial Summary Judgment, (related documents(s)8).

APPEARANCES:

FOR PLAINTIFF:   DAVID J. BABEL, ESQ.
                 *(Attorney for Debtor –*
                 *Appearing telephonically)*
                 2525 Eastchester Road
                 Bronx, New York 10469

                 LINDA M. TIRELLI, ESQ.
                 *(Attorney for Debtor)*
                 Garvey Tirelli & Cushner, Ltd.
                 Westchester Financial Center
                 50 Main Street - Ste. 390
                 White Plains, New York 10606

*Proceedings electronically recorded.*
*Transcript produced by:*

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel. (845) 452-3090 - Fax: (845) 452-6909*
amlegaltrans@aol.com

APPEARANCES (Continued):


        FOR DEFENDANT:    DAVID DUNN, ESQ. and
                          NICOLE C. SCHIAVO, ESQ.
                          *(Attorneys for Wells Fargo Bank, NA on*
                          *behalf of HSBC as Trustee for the Trust*
                          *that owns the Note)*
                          Hogan Lovells US LLP
                          875 Third Avenue
                          New York, New York 10022

*Proceedings electronically recorded.*
*Transcript produced by:*

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel. (845) 452-3090 - Fax: (845) 452-6099*
amlegaltrans@aol.com

*Proceedings*                                                3

1

2              THE COURT:  Is there anyone on the telephone in

3     the Mota case?

4              MR. BABEL:  Yes.  David Babel is on the line --

5              THE COURT:  All right.

6              MR. BABEL:  -- representing --

7              THE COURT:  All right.  I'll take appearances then

8     in the Mota case.

9              MR. BABEL:  Hi, this is David Babel --

10             THE COURT:  Come forward, please?  Then I'll take

11    your appearance, Mr. Babel.

12             MR. BABEL:  Thank you.

13             THE COURT:  I'll take appearances of those in the

14    courtroom.

15             MR. DUNN:  Your Honor, I'm David Dunn.  I'm with

16    Hogan Lovells and I represent Wells Fargo on behalf of HSBC

17    as Trustee for the trust that owns the note.

18             MS. SCHIAVO:  Nicole Schiavo, also with Hogan

19    Lovells.

20             THE COURT:  I see Ms. Tirelli is not here.

21             MR. BABEL:  Ms. Tirelli is in front of Judge

22    Grossman on a conflicting matter this morning.

23             THE COURT:  That's right.  She said she would be.

24    Well, I'm sorry, counsel, you can't get too comfortable,

25    we'll have to wait for Ms. Tirelli.

```
 1            MR. DUNN:  Okay.

 2            MR. BABEL:  Thank you very much.

 3            THE COURT:  I assume she's before Judge Grossman

 4   here in Manhattan?

 5            MR. BABEL:  That is correct.

 6            THE COURT:  All right.

 7            THE COURT:  So, do we have any idea how long Ms.

 8   Tirelli will be before Judge Grossman?

 9            UNIDENTIFIED SPEAKER:  Your Honor, Judge

10   Grossman's calendar is pretty long.  I'm on it also.

11            MR. BABEL:  I wish I could provide that

12   information.  She said she would get there as

13   expeditiously --

14            THE COURT:  Mr. Babel, I missed -- everything you

15   say is being picked up by the microphone, so you may want to

16   put it on mute.

17            MR. BABEL:  Okay.

18            THE COURT:  I don't know if that okay was aimed at

19   me?

20            MR. BABEL:  Yes.  I hear you, Judge.  I don't know

21   precisely when Ms. Tirelli will be here, but she said she'd

22   make every effort to be here expeditiously and requested a

23   second call.

24            THE COURT:  Well, we're on third call right now,

25   but that's all right, everybody else is in the same
```

1    position.

2              MR. BABEL:  Maybe what I can do is that I can text

3    her and see if I can get a sense of where she's at.

4              THE COURT:  Well, we could also ask -- I'll ask my

5    intern.  Go into Judge Grossman's courtroom and see if we

6    can get an idea of how Ms. Tirelli is doing.

7              INTERN:  What room number?

8              MR. BABEL:  Okay.

9              THE COURT:  Excuse me?

10             INTERN:  What room number?

11             THE COURT:  He's the visiting judge.  He's on --

12    is he on the sixth floor?

13             UNIDENTIFIED SPEAKER:  601.

14             THE COURT:  601.  Oh, in Judge Peck's courtroom?

15             UNIDENTIFIED SPEAKER:  Yes.

16             THE COURT:  Judge Peck's, the end of the hall,

17    opposite mine.

18             INTERN:  Thank you.

19

20                        (Second call)

21

22             THE COURT:  All right.  Are we now ready on Carlos

23    Mota?

24             MS. TIRELLI:  Good morning, Your Honor.  Linda

25    Tirelli on behalf of the Plaintiff/Debtor, Mr. Carlos Mota.

*Proceedings*                                                    6

1   I believe that Mr. Babel's on the phone.

2              THE COURT:  He was.  Mr. Babel, have you stayed

3   with us?

4              MR. BABEL:  I'm still here, Your Honor.

5              THE COURT:  All right.  We have his appearance.

6   All right.  You're for the creditor?

7              MR. DUNN:  David Dunn, of Hogan Lovells, and with

8   me is my associate Nicole Schiavo, Your Honor.

9              THE COURT:  Good morning.

10             MR. DUNN:  Good morning, Your Honor.

11             THE COURT:  All right.  I have a great many papers

12  on this matter, and let me hear from the parties, so perhaps

13  both parties can clarify exactly where we are and exactly

14  what relief they request.

15             Now, among the relief that I know the parties want

16  is a motion for partial discovery -- pardon me -- partial

17  summary judgment, that's been made on only a few days'

18  notice.  There is no cross-motion procedure in federal

19  court, as I'm sure you know, unlike state court, so

20  obviously the debtor here has, and should have, time to

21  respond to the motion of summary judgment.  So I'm not going

22  to hear that today, other than to schedule a hearing on the

23  motion, but let me see what remains to be done today and

24  what relief the parties wish.

25             Do you wish to be heard on this, what I just said,

 1   Mr. Dunn?

 2          MR. DUNN:  The only thing -- yes, Your Honor, I do

 3   wish to be heard.

 4          THE COURT:  All right.

 5          MR. DUNN:  What I would say is, my understanding

 6   -- and Ms. Schiavo was a participant -- was that we did have

 7   a conversation with your chambers about bringing a cross-

 8   motion and --

 9          THE COURT:  I have no doubt that you called my

10   calendar clerk and my calendar clerk -- you asked for a

11   date, you asked to put it on the calendar, and what's my

12   calendar clerk going to say?

13          MR. DUNN:  I understand, Your Honor.  And we do --

14   we have no --

15          THE COURT:  So I'm not saying you did anything

16   wrong, I'm just saying where I believe we are.

17          MR. DUNN:  And we have no objection to the debtor

18   having an opportunity to respond, and I think the debtor

19   should respond, because I think there are some fundamental

20   legal issues here that we honestly believe, Your Honor, are

21   dispositive of the claims that have been asserted in the

22   objection.

23          THE COURT:  Well, I have no doubt that you

24   honestly believe those matters and I'm sure the debtor

25   honestly believes in her client's position, but let's see

 1   where we are, I'd like to give the debtor an opportunity to

 2   be heard, you will have every opportunity to be heard on any

 3   issue.  And I agree with -- I think the thrust of what

 4   you're saying is that we need to clarify where we are and

 5   exactly what relief is being sought.

 6          Your client is seeking certain relief and the

 7   debtor obviously is seeking certain relief and I'm trying to

 8   figure out, at this stage of the case, what that is.

 9          MR. DUNN:  I agree that that's --

10          THE COURT:  All right.

11          MR. DUNN:  -- a perfectly appropriate agenda, Your

12   Honor.

13          THE COURT:  Okay.

14          MS. TIRELLI:  Thank you, Your Honor.  If I may,

15   the motion that is before the court today is a motion to

16   reopen discovery for a very limited purpose.  It was only

17   after the court-ordered discovery period had ended that I

18   came into two documents; one is what they called a -- well,

19   I'm terming it as, the note endorsement team order form.

20   Part of our complaint here is that there are certain

21   documents which we believe to be fraudulent in nature.  I

22   had obtained two depositions of Wells Fargo employees --

23          THE COURT:  Now, when you say the documents are

24   fraudulent, tell me what you mean by that?

25          MS. TIRELLI:  I mean that they've been fabricated

*Proceedings*                                                    9

1   for the purpose of enticing the court's reliance.

2            THE COURT:  Okay.  And tell me what you mean by

3   "fabrication," those are obviously strong words.

4            MS. TIRELLI:  Yes, Your Honor.

5            THE COURT:  So you're saying that a signature was

6   put on the documents by someone other than the person

7   purported to be the signor?

8            MS. TIRELLI:  Quite possibly, Your Honor.  There's

9   actually two documents in question.  At the time the first

10  motion -- I'm sorry, at the time the first proof of claim

11  was filed by the Steven Baum law firm, the image of the note

12  that was provided was specifically endorsed by rubber stamp

13  to Wells Fargo, but the name of the claimant is actually a

14  securitized trust, HSBC.  I questioned it.  I filed an

15  objection to it.  The Steven Baum firm filed, after the

16  objection, a new proof of claim, an amended proof of claim,

17  and this time it had a new endorsement on it that was now

18  endorsed in blank.  So I'm questioning actually both

19  endorsements.  I read a 2010 deposition of John Kennerty,

20  who happens to be the signor of another document in this

21  case, but I read his testimony from 2010 in an unrelated

22  case where he testified to not only signing at a rate of 50

23  to 100 documents per day for Wells Fargo, but he also

24  testified that there was a process or a procedure where a

25  lawyer, if they felt they needed a note to be endorsed, they

1    could send it back to Wells Fargo and get endorsements put

2    on.  I inquired about that procedure to Wells Fargo and they

3    gave us two witnesses, a 30(b)(6) by the name of Mary Ellen

4    Brust, and then another affiant in the case, Mr. Paul Brown.

5    My reading of the depositions, and having taking the

6    depositions, is that neither witness had any knowledge

7    whatsoever of there being such a procedure.  After the close

8    of discovery, Your Honor, in another unrelated case, the

9    case of America Sanchez, and I did provide this to the

10   court, I received a document from another attorney from

11   Wells Fargo -- not the current firm that's here today, Your

12   Honor -- where there, in fact, was an order form on Wells

13   Fargo stationary that's addressed to the note endorsement

14   team, so I served additional discovery based on that

15   document over to opposing counsel in this case, to say, hey,

16   since there is a note endorsement team, I'd like to see the

17   documentation pertaining to this case.  It was not responded

18   to.

19         I then obtained a copy of a Wells Fargo Home --

20   I'm sorry -- Wells Fargo Home Mortgage Foreclosure Attorney

21   Procedure Manual that was found online, Your Honor, as a

22   public document.  I served that with request for admission

23   over to opposing counsel and asked them to admit or deny its

24   authenticity.  I went through basically four or five very

25   simple admissions about this document.  What I received

1  back, Your Honor, was a letter from Ms. Schiavo saying

2  discovery is closed.

3           THE COURT:  I know that and I gather that the

4  creditor has wisely withdrawn the position that the document

5  is somehow privileged.  I think we're beyond that and --

6           MS. TIRELLI:  Yes.

7           THE COURT:  -- it's withdrawn refusal to

8  acknowledge the document.

9           MS. TIRELLI:  That's correct, Your Honor.

10           THE COURT:  They haven't agreed that it's

11  relevant, but they --

12           MS. TIRELLI:  This is true.

13           THE COURT:  -- it's -- it's available and in the

14  record (inaudible).

15           MS. TIRELLI:  Yes.

16           THE COURT:  All right.

17           MS. TIRELLI:  So, Your Honor, where we are today

18  is this:  The letter specifically says, as I'm reading it

19  and paraphrasing, Your Honor, Wells Fargo will not be

20  responding to additional discovery because the discovery

21  period is closed per court order.  So my only option at that

22  point is to come in and attempt to reopen discovery.

23           THE COURT:  All right.  That's --

24           MS. TIRELLI:  And that's where we are today, Your

25  Honor.

*Proceedings*                                                    12

```
 1              THE COURT:  That is one issue directly before me

 2   today.

 3              MS. TIRELLI:  Right.  Yes, Your Honor.  And that's

 4   the issue.

 5              THE COURT:  That is the only issue before me

 6   today.

 7              MS. TIRELLI:  Yes, Your Honor.  And so it's --

 8              THE COURT:  Now, you want to examine with regard

 9   to further information relating to the endorsements and to

10   use the manual and any other information that's become

11   available to you?

12              MS. TIRELLI:  Yes, Your Honor.

13              THE COURT:  Okay.

14              MS. TIRELLI:  It's not just the endorsements, it's

15   also the assignment.  I want to just --

16              THE COURT:  The assignment.

17              MS. TIRELLI:  -- you know, make that clear.

18              THE COURT:  The assignment.  The assignment.

19              MS. TIRELLI:  It's both documents, yes.

20              THE COURT:  Now, if you find that the facts

21   support your position in every way that the endorsement, the

22   assigned -- the endorsement was put on the documents after

23   the fact, but with the authority of the various parties, and

24   if you find that the creditor initially fudged the matter,

25   provided an unclear document, etcetera, if you find that all
```

1    of that is true and correct, what is the appropriate relief

2    the court could grant under those circumstances?

3              MS. TIRELLI:  Your Honor, I believe that filing

4    false documents or, as you say, "fudged documents" with the

5    federal court inviting litigation for as long as this has

6    been going on is sanctionable.  It's sanctionable.

7              THE COURT:  All right.  We'll take a look at the

8    Supreme Court's most recent case on *Sanctions Law against*

9    *Siegel*, they didn't like the sanctions that the Bankruptcy

10   Court had created in that case, but the last paragraph says

11   there are sanctions available.

12             What about the mortgage?  Do you think this

13   invalidates the mortgage altogether and we just throw it

14   out?

15             MS. TIRELLI:  Well, Your Honor, I'm not saying

16   that it invalidates the mortgage, the issue is who are we

17   supposed to pay, and does the party in interest that has

18   come forward have the right to collect on this.  If they

19   have fudged documents, then perhaps, if I say fabricated

20   documents, they should be denied that relief as part of the

21   sanction.

22             THE COURT:  All right.

23             MS. TIRELLI:  It does not lift the lien on the

24   land records, and I understand that.

25             And just so the court is aware, you know, my

*Proceedings*                                                        14

1   client is always willing to sit down with a creditor and try

2   to work this out, but, if not, we need to come get our

3   relief from the court.

4           THE COURT:  All right.  Thank you.

5           MS. TIRELLI:  Thank you, Your Honor.

6           THE COURT:  All right.  Do you wish to be heard on

7   the issue of opening discovery?

8           MR. DUNN:  Yes, I do, Your Honor.  This is a

9   motion to reopen discovery.  I don't think there's any

10  dispute the discovery's been closed.  I don't think there's

11  any dispute that Ms. Tirelli took three separate depositions

12  of current or former Wells Fargo's personnel.  It is not

13  true, as she says, that this issue of signing procedures was

14  before the 30(b)(6) or was not appropriately responded to

15  with respect to 30(b)(6), and certainly, if that was an

16  issue that she inquired of as a -- and required a 30(b)(6)

17  witness and she believed she did not receive appropriate

18  responses or an appropriately knowledgeable witness, the

19  time to have sought relief with respect to that has long

20  since passed, Your Honor.  If there was a 30(b)(6) notice of

21  Wells Fargo that she believed had not been complied with,

22  she had her remedies.  She could have called that to our

23  attention, we would have had a conference about it, the

24  matter would have been called to the attention of the court

25  long ago.  None of that happened.

*Proceedings*                                           15

1              And by the way, there was no conference here, Your

2      Honor, and as Your Honor has pointed out, if there had

3      been --

4              THE COURT:  You're absolutely right, there was no

5      conference, which is part of our rules.

6              On the other hand, there was no conference before

7      the motion for summary judgment was filed by your client and

8      that's part of our rules too.

9              MR. DUNN:  Okay.

10             THE COURT:  So maybe we'll call that a draw.

11             MR. DUNN:  Okay.  We can call it --

12             THE COURT:  And we're here.  We're here today.

13             MR. DUNN:  We're here.  And why don't we talk

14     about the issues.  I think Your Honor really has put your

15     finger on the critical point here, Judge, and that is -- and

16     I'm not conceding for one second that any -- that the

17     endorsement by Wells Fargo was placed on the note after the

18     filing of the proof of claim, I believe we can show that in

19     accordance with Wells Fargo's procedures that endorsement

20     was to have been placed, and we believe it was placed, at

21     the time Wells Fargo obtained the note.

22             I also, this is the very first time -- and I need

23     to check the records, but I am not aware ever before that

24     there has been any claim that the endorsement to Wells Fargo

25     by MLD, which is the original lender and the original payee

*Proceedings*                                                16

```
 1    of the note -- I'm not aware there's ever been any claim

 2    that that endorsement was forged, was wrong, and that

 3    endorsement did appear clearly, and there is no dispute that

 4    it appeared on the note, on the copy of the note, that was

 5    attached to the proof of claim.  This is the very first I

 6    hear that there's any issue about that.  And that's pretty

 7    important, Your Honor, because the fact of the matter is, as

 8    we understand it, and I don't believe there's any dispute

 9    about it, the note was endorsed by MLD to Wells Fargo.  And

10    by the way, Ms. Tirelli is not correct when she says the

11    trust filed the proof of claim.  I have the proof of claim

12    in front of me.  It was filed by Wells Fargo as servicer for

13    the trust.  So if Ms. Tirelli was right and the state of the

14    note at the time of the filing of the proof of claim was

15    that it was endorsed only by MLD to Wells Fargo and had not

16    been endorsed, as the subsequent endorsement indicates, in

17    blank, by Wells Fargo, that makes no difference as a matter

18    of law, Your Honor, and that is the point of our motion for

19    partial summary judgment.  Wells Fargo was the payee.  Wells

20    Fargo had the note, therefore under Section 3301 of the

21    Uniform Commercial Code, Wells Fargo was the holder and it

22    does not matter, Your Honor, whether Wells Fargo was the

23    owner or beneficially of the note, in fact, it was not, as

24    Wells Fargo indicated and disclosed in the proof of claim,

25    pursuant to a pooling and servicing agreement that goes back
```

*Proceedings*                                                    17

 1   many years, 2005 or 2006, 2006, the note, this loan, was

 2   assigned by Wells Fargo to the trust.  The pooling and

 3   servicing agreement is a written assignment.  Now the

 4   consequence of that, Your Honor, is that under Section 3201

 5   of the Uniform Commercial Code, the transferee, the trust,

 6   has an absolute right, absolute right is what 3201 provides,

 7   to demand endorsement in blank by the transferor, Wells

 8   Fargo.  So if it is the case that Ms. Tirelli is right, and

 9   I'm not saying she is, and we can have discovery, although

10   we had a lot of discovery about that and the time to have

11   discovery of that has long since passed, we would suggest,

12   but if we had that discovery and even if she could show that

13   Wells Fargo endorsed the note in blank after the filing of

14   the proof of claim, it would have absolutely no consequence

15   because Wells Fargo was the holder pursuant to the

16   endorsement to Wells Fargo, Wells Fargo had an obligation

17   both under the Uniform Commercial Code and under the pooling

18   and servicing agreement to endorse the note in blank for the

19   benefit of the trust and Wells Fargo had a fiduciary and

20   contractual obligation to the trust as servicer and

21   custodian to act in the interest of and for the benefit of

22   the trust, but was independently, if Ms. Tirelli is right,

23   the holder of the note fully entitled under New York Law to

24   enforce it.  And, again, there's no fraud, there's no error,

25   there's nothing that is deceiving the court.  Wells Fargo is

*Proceedings*                                                          18

1   the holder, Wells Fargo acted on behalf of the trust

2   pursuant to the pooling and servicing agreement, which is a

3   written assignment, none of that is disputable, and what's

4   most important is, Mr. Mota is the debtor, he owes this

5   money.  He is obligated.  And indeed this loan was

6   originally schedule when he filed his original petition.

7   And Mr. Mota has testified that he dealt with Wells Fargo

8   for an extended period of time, he made payments to Wells

9   Fargo on behalf of the holder and owner of the note, and

10  there is not anybody else, Mr. Mota is not confused, Ms.

11  Tirelli is not confused, there is no issue or dispute that

12  anyone, anyone in the world, other than Wells Fargo on

13  behalf of the trust, has ever made any claim to Mr. Mota

14  that they were the person who should be paid.  And he has

15  acknowledged that he had a mortgage and he has acknowledged

16  that in the filing of his original schedule that that

17  mortgage remains a security for a loan that remains

18  outstanding.  So I don't understand who is being defrauded

19  here, Your Honor, I don't understand what the issue in

20  dispute is, and therefore I think the discovery that Ms.

21  Tirelli seeks is unnecessary.  But in any event, she

22  concedes.  If you look at her own papers, Your Honor, she

23  says that Mr. Kennerty testified about these procedures for

24  endorsing notes.  And of course there are procedures for

25  endorsing notes.  Wells Fargo is a large bank.  Your Honor,

1   is I'm sure aware that it is one of the largest servicers

2   and holders in its own right of notes, it is an assignee of

3   notes in many instances, so of course Wells Fargo has

4   procedures and processes by which it endorses notes.  The

5   idea that this is a big surprise or that Ms. Tirelli just

6   discovered this is really, I think, somewhat disingenuous.

7          But in any event, she concedes in, I believe,

8   it's paragraph nine of the motion, Your Honor, that she

9   learned about this, that Mr. Kennerty testified in 2010 in

10  some other case, and in 2012, in this case, that he -- after

11  he was no longer employed -- about such a procedure, about a

12  procedure for endorsing notes.  Well, if she wanted to

13  inquire about that, Mr. Kennerty called it to her attention

14  in his deposition in 2012, she had taken, before that time,

15  the deposition of Ms. Brust, as the 30(b)(6) witness, and if

16  she believed that that was in any way deficient, she had all

17  of her remedies, both first to come to counsel and then to

18  come to the court at the time, and we don't believe that

19  there is any reason or necessity to reopen discovery.

20         What I suggest, Your Honor, for all the reasons --

21  and in any event, as I said, the discovery isn't going to

22  lead to anything meaningful -- what I would suggest, Your

23  Honor, is that you hold this motion in the abeyance, that we

24  schedule a time for Ms. Tirelli to respond to the motion for

25  partial summary judgment, that you decide whether I'm right,

*Proceedings*                                              20

```
 1    that it doesn't make any difference as to whether in fact

 2    the endorsement by Wells Fargo in blank was placed on the

 3    note before or after the filing of the proof of claim, and

 4    if there's anything left to that issue after you've heard

 5    and decided the motion for partial summary judgment, then

 6    you can decide whether, under these circumstances, Ms.

 7    Tirelli ought to get the depositions that she's requesting.

 8    And that is the relief that we would request from the court

 9    today.  Because we think this case can in fact be disposed

10    of on that basis.  There is an adversary proceeding that's

11    been brought here and as we explain in our motion for

12    partial summary judgment, which I know you're not

13    specifically hearing, we believe that you can dispose of the

14    claims in the adversary proceeding and we will wind up, Your

15    Honor, down to one very narrow little issue, which is about

16    fees and expenses in connection with default by Mr. Mota

17    that have been charged by Wells Fargo.  And that, I would

18    suggest, if we're down to that issue, I would hope that

19    issue could be resolved and we would not have to try that

20    issue.  So I think what I'm suggesting is the most

21    expeditious way to proceed.  And in light of the fact that

22    we've already had three depositions by Wells Fargo and

23    discovery closed a long time ago, and there are legal issues

24    that sooner or later the court is going to have to face, in

25    any event, so I think that what I've suggested is the most
```

*Proceedings*                                                21

```
 1    orderly procedure to get this all on track and let both the

 2    debtor respond and Your Honor have appropriate time to

 3    address what I think are some fairly significant legal

 4    issues that we believe are dispositive in this case.

 5              THE COURT:  Thank you.

 6              MS. TIRELLI:  Your Honor, if I just may rebut for

 7    a minute.

 8              THE COURT:  Sure.  Take your time.

 9              MS. TIRELLI:  Thank you, Your Honor.  This is not

10    a motion for summary judgment, this is not a motion to

11    dismiss, this is a motion to reopen discover for a very

12    limited purpose.  There were in fact only two depositions of

13    Wells Fargo current employees, again, Mary Ellen Brust and

14    Mr. Paul Brown.  In between there was a deposition of a

15    former --

16              THE COURT:  And how many depositions are you

17    seeking if discovery is reopened?

18              MS. TIRELLI:  Your Honor, I think if they have

19    just one witness who can clarify it whether or not the

20    procedures described in this manual were used in this case,

21    the manual, as I read it, Your Honor, allows a lawyer to

22    request from Wells Fargo that an unendorsed note be

23    endorsed.  I did not have access to this manual.  I would

24    not have known to ask for this manual, because I wouldn't

25    have known it existed until about a month or so ago.  But
```

 1   there is very clearly a procedure in here, where, as I

 2   understand it, if there is no endorsement, Wells Fargo will

 3   fix that.  The rubber stamp endorsement from MLD, which is

 4   no longer in business at the time this is filed --

 5            THE COURT:  Is that wrongful, that procedure?

 6            MS. TIRELLI:  Well, Your Honor, I would say yes.

 7   Because I don't believe that MLD would have necessarily

 8   granted permission, and perhaps this is something we're

 9   going to find out in discovery, that it would have been

10   authorized to go from MLD to Wells Fargo.  And in any case,

11   if Wells Fargo is acting as an agent for a third party, the

12   trust, the claim is brought on behalf of the trust and

13   therefore the claimant has to be proved that it is the valid

14   claim here.

15            I'm also going to point out that that amended

16   proof of claim was withdrawn by Wells Fargo voluntarily.  So

17   the only operative proof of claim that we have here has one

18   rubber stamp endorsement on it, which I am questioning.  I

19   wouldn't have known to question it before having this

20   manual, but it occurs to me that this manual very clearly

21   allows Wells Fargo attorneys to request that rubber stamp

22   endorsements be placed on unendorsed notes.  Whether or not

23   it's authorized, that's something we'd have to find out in

24   discovery.

25            THE COURT:  All right.

*Proceedings*                                          23

```
 1          MR. DUNN:  Your Honor, there's never been, never

 2   been a claim that the MLD endorsement was anything but

 3   proper, and it appears on the note as it was filed attached

 4   to the original proof of claim.  This is the very first time

 5   I'm hearing that there's any such claim.  That is a very --

 6   if there's any basis for that claim, I have no idea what it

 7   is.  That is an extraordinarily serious charge, Your Honor,

 8   to claim that Wells Fargo forged somebody else's

 9   endorsement.  And I hope Ms. Tirelli has some proof of that

10   because, frankly, if that allegation were made outside this

11   courtroom, it would be defamatory.  It is a very, very

12   serious allegation.  I understood the issue that we had.

13   And what the papers frame up is an issue of when did Wells

14   Fargo apply Wells Fargo's own endorsement.  Now, I think

15   Your Honor again asked exactly the right question:  Why does

16   it matter what the timing is?  And, obviously, at all points

17   in time Wells Fargo has the absolute right to endorse a note

18   on behalf of Wells Fargo.  Which is all that was done here.

19   And Ms. Tirelli is also wrong about the idea that Wells

20   Fargo doesn't have a right to enforce this note, because

21   Wells Fargo is the holder, and as the payee on the

22   endorsement and the holder, under 3301, without regard to

23   the trust beneficial ownership and without regard to the

24   trust's right to demand endorsement under 3201, Wells Fargo

25   has an -- has and had at the time of the proof of claim an
```

*Proceedings*                                              24

1    absolute right under the law of the state of New York to

2    enforce the note under 3301, which says, specifically, Your

3    Honor, that a holder, whether or not it is the owner, and a

4    holder is defined by 1201, as someone in possession of a

5    note made payable to it, to it's order, to a bearer or in

6    blank.  And this note was, as attached to the proof of

7    claim, made payable to Wells Fargo, so there just is no

8    dispute that as a matter of law Wells Fargo was a holder,

9    Your Honor.  And that is the crux of the issue.  And there's

10   no discovery that needs to be taken in my view on that

11   issue.  And there is no evidence --

12            THE COURT:  Let me see if Ms. Tirelli will clarify

13   what -- which of the various assignments here you do wish to

14   examine?

15            MS. TIRELLI:  Well, Your Honor, there's the one

16   assignment, which is signed by John Kennerty, we do dispute.

17   We do believe that to be a fraudulent document.  And then --

18            THE COURT:  And that is the assignment from whom?

19            MS. TIRELLI:  That's assignment of mortgage, Your

20   Honor.

21            THE COURT:  Okay.

22            MS. TIRELLI:  Okay.  So we do dispute that.

23            THE COURT:  From Wells Fargo to the --

24            MS. TIRELLI:  To the trust.

25            THE COURT:  -- to the trust?

*Proceedings*                                                      25

```
 1        MS. TIRELLI:  Yes.  But it was after the trust

 2   would have closed.

 3        THE COURT:  After the --

 4        MS. TIRELLI:  So after the trust would have

 5   closed.  The trust, under the pooling and servicing

 6   agreements, since Mr. Dunn is the one inflicting the pooling

 7   and servicing agreement, let's just point out the fact that

 8   the trust had a closing date, and I don't have that date on

 9   the top of my head, but it certainly was prior to the date

10   of that assignment, a defaulted loan, as they're claiming

11   this loan is defaulted, could not be accepted into

12   securitized trust, so I am saying that that document is, in

13   fact, fraudulent, and this would not be the first court to

14   find a John Kennerty assignment to be a fraudulent document.

15   But we're not here to argument the entire case, Your Honor.

16   Okay.  I do believe that there is additional discovery

17   warranted.  Where I'm getting this possibility that this

18   other endorsement on the note is fraudulent is directly from

19   the Wells Fargo attorney manual which provides for such a

20   procedure.  It is Mr. Dunn's own client that set forth the

21   procedure to allow that.  Let's get some clarity.  Let's

22   have someone who understands this manual.

23        THE COURT:  Does the manual say that Wells Fargo

24   can endorse a note with somebody else's name, other than its

25   own?
```

*Proceedings*                                                              26

1            MS. TIRELLI:  What it says, Your Honor, as I read

2    it, is that if the attorney determines that the note is

3    unendorsed and requires an endorsement, it can send it back

4    to the note endorsement team.

5            My deposition of John Kennerty was as to his

6    recollection and at this point he was out of Wells Fargo

7    about a year and a half or two years, I believe, at that

8    point, was that there was in fact a team where, if a note

9    came back from the lawyer then they had about four

10   individuals who would sit there with rubber stamps and stamp

11   endorsements on notes.  That was -- I'm paraphrasing, but

12   that's my understanding of his testimony.  I believe that

13   this manual and the note endorsement team order form that I

14   provided to this court corroborate Mr. Kennerty's testimony.

15   And it's further curious that their 30(b)(6) witness, and

16   the subsequent witness, Mr. Cole Brown, had -- claim to have

17   no knowledge of there being a note endorsement procedure,

18   that there is such a procedure.

19           THE COURT:  All right.  It seems to me that that's

20   there's a very narrow question here, and that is, whether

21   the motion for summary judgment should be heard before or

22   after the additional discovery that the debtor has sought,

23   and it seems to me that since this is a motion for summary

24   judgment, it should follow, rather the precede the close of

25   discovery.  I am not entirely certain of the issues, but the

1    discovery being sought appears to be somewhat limited,

2    provided that there is some real cooperation on the lender's

3    behalf in terms of producing a witness who can testify as to

4    the matters relating to the manual, the manual is new, has

5    come to light most recently, the lender certainly did not

6    take a cooperative position initially relating to the

7    manual, taking some positions that it has not been able to

8    sustain, so I will reopen discovery as requested for the

9    limited purposes sought and we will then hear the motion for

10   summary judgment after that partial summary judgment, after

11   that discovery is complete, and the lender can certainly

12   continue to take the position that it's all irrelevant.  If

13   it is, then the motion for summary will be granted --

14            MS. TIRELLI:  Thank you, Your Honor.

15            THE COURT:  -- partial summary judgment.

16            MR. DUNN:  Your Honor, can we be clear on what the

17   discovery is?  Because I now -- I really don't know what

18   discovery it is Ms. Tirelli is seeking.  And I want to be

19   clear about this.  One of the problems, of course, is that

20   with respect to what counsel did or didn't do.  Counsel was,

21   who filed the proof of claim, was Steven Baum and Company

22   and they are defunct, so we don't have an ability to control

23   or ask counsel what they did and what they were aware of at

24   the time, so I can't produce counsel and I can't have

25   counsel explain whether they followed a manual that was

*Proceedings*                                                          28

1    addressed to counsel.  The procedure that Ms. Tirelli

2    references, and the form she attached, says, specifically,

3    that if a note needs to be endorsed and Wells Fargo has

4    signing authority, it should be sent for signature, and if

5    Wells Fargo does not have signing authority, the document

6    should be sent to the third party for signature.  I don't

7    know.  That's obviously the proper approach.  If a note has

8    not been endorsed by Wells Fargo, Wells Fargo can endorse

9    it, and if a third party has not endorsed it, it should be

10   sent to the third party.  Are we inquiring about the --

11          THE COURT:  We're getting -- we're getting deeper

12   and deeper into the specifics of the discovery.

13          MR. DUNN:  I -- what are --

14          THE COURT:  Are you able today, right now, to say,

15   with any more specificity the discovery which you wish?

16          MS. TIRELLI:  No, Your Honor.  But I can certainly

17   prepare discovery and send it over to opposing counsel and

18   work with him.  If I have one week, I can send out

19   additional discovery requests.  I don't think that I'm

20   asking for a whole lot of time here, Your Honor.

21          THE COURT:  No, you said a few minutes ago that

22   you were thinking about limited discovery, one witness --

23          MS. TIRELLI:  Yes.

24          THE COURT:  -- and you have already served some

25   requests for admission, which may or may not be appropriate,

*Proceedings*                                                29

1    why don't you do that within a week, provide counsel with

2    more specificity as to the discovery sought.

3              MS. TIRELLI:  Thank you, Your Honor.

4              THE COURT:  And I will only express the hope that

5    I won't have to get into the middle of this under the

6    circumstances.  But if I do, I'm open for business.

7              MR. DUNN:  I understand.  And thank --

8              MS. TIRELLI:  Thank you, Your Honor.

9              MR. DUNN:  Thank you, Your Honor.  A housekeeping

10   matter.

11             THE COURT:  Yes.

12             MR. DUNN:  This case actually was set for trial on

13   April 22nd.

14             THE COURT:  That's correct.

15             MR. DUNN:  So...

16             THE COURT:  That doesn't seem realistic, does it?

17             MR. DUNN:  I don't think so, Your Honor.

18             THE COURT:  All right.  Shall we set a date

19   whereby discovery will be completed, or shall I just adjourn

20   your motion for partial summary judgment without date to be

21   put on the calendar once discovery is completed?

22             MR. DUNN:  Yeah, I --

23             MS. TIRELLI:  Your Honor, I guess the question is,

24   if I -- assuming that I do in fact serve -- and I do intend

25   to serve and will serve -- my discovery requests within one

1     week, I guess I need to know if opposing need a full 30 days

2     to respond before producing a witness.

3              THE COURT:  Why don't you -- why don't you discuss

4     that --

5              MS. TIRELLI:  We need to discuss that.

6              THE COURT:  -- with him.

7              MS. TIRELLI:  Yes.

8              THE COURT:  -- offline --

9              MS. TIRELLI:  Okay.

10             THE COURT:  -- and see if you can agree on a --

11             MS. TIRELLI:  On a date.

12             THE COURT:  -- on a date and then we'll get -- we

13    should get the motion for summary judgment back on the

14    calendar as soon as possible.

15             MR. DUNN:  I think as soon as we see the request

16    for the deposition and we set a date, it seems to me, as I'm

17    willing to -- I'm willing to stick to what I said, so that I

18    think the date of the deposition should not affect the

19    response to the motion for summary judgment or setting it,

20    we'll take the deposition and we can set a date promptly

21    after that for the response and then get us on the calendar.

22             MS. TIRELLI:  That sounds like a plan, Your Honor.

23             THE COURT:  April 22nd, as it turns out, it's not

24    a good date, in any event.

25             MS. TIRELLI:  Right.

*Proceedings*                                    31

1           THE COURT:  So we will adjourn that.  Do you have

2      any other matters on, on April 22nd, which I have --

3           MS. TIRELLI:  I think I do have one other on April

4      22nd that was continued from last week.

5           THE COURT:  Now, it wouldn't had been --

6           MS. TIRELLI:  Or maybe I do.  No, actually, I'm

7      sorry, I did, Your Honor, you know what, it was actually,

8      Singleton, *In Re:  Robert Singleton*.  But that case, we do

9      have a settlement that's in the works, that's just a matter

10     of papering it down.

11          THE COURT:  All right.

12          MS. TIRELLI:  So I'm not expecting that that's the

13     case, if we have to go forward.

14          THE COURT:  It's not going to go forward on that

15     date.

16          MS. TIRELLI:  Then maybe we'll get a holding date

17     for that one.

18          THE COURT:  Yes.  You can leave --

19          MS. TIRELLI:  I'll call chambers and get a holding

20     date.

21          THE COURT:  -- leave it on as a holding date and

22     maybe it will encourage the parties to get the settlement

23     done.

24          MS. TIRELLI:  One can always hope.

25          THE COURT:  One can hope for that in every case.

1                    MS. TIRELLI:  Yes.  Thank you, Your Honor.

2                    THE COURT:  That's up to the parties.

3                    MR. DUNN:  Your Honor, thank you very much.

4                    MS. TIRELLI:  Thank you.

5                    THE COURT:  Thank you.

6                    MS. TIRELLI:  And, Your Honor, I'm sorry.  I just

7      want to apologize for being late.  I was with Judge

8      Grossman.

9                    THE COURT:  No.  That's all right.

10                   MS. TIRELLI:  Okay.  Thank you.

11

12                         (Proceeding adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25                              *  *  *

```
 1

 2            CERTIFICATION

 3

 4

 5            I, DEBRA S. NIEVES, certify that the foregoing

 6            transcript is a true and accurate record of the

 7            proceeding.

 8

 9

10

11            Debra S. Nieves

12            AMERICAN LEGAL TRANSCRIPTION

13            11 Market Street, Suite 215

14            Poughkeepsie, New York 12601

15            Date:  April 10, 2014

16

17

18

19

20

21

22

23

24                          -o0o-
```